

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 28, 1958

Hon. William A. Harrison
Commissioner of Insurance
International Life Building
Austin, Texas

Opinion No. WW-167

Re: Whether the "reserve" mentioned in Section 7 of Article 3.44, Texas Insurance Code, includes therein the deficiency reserve described in Section 2 of Article 3.28, Texas Insurance Code.

Dear Sir:

In your request for an opinion, you posed the following question:

"We respectfully request your opinion as to whether the terms 'the reserve (exclusive of any reserve for disability or accidental death benefits)' and 'the reserve on the policy,' which appear in Section 7 of Article 3.44 include in such reserve the so-called deficiency reserve described in Section 2 of Article 3.28. In other words, must the cash, loan, amount of extended insurance, and other non-forfeiture values of the policy be increased by including therein the amounts in the deficiency reserve allocated or attributable to the particular policy involved?"

Article 3.28 of the Texas Insurance Code deals with the computation of reserves for legal reserve life insurance companies. Section 1 of this Article requires the State Board of Insurance to compute the reserve liability of every company authorized to do business in this State as of December 31, of the preceding year. With the exception of group insurance and policies of insurance issued by Chapter 11 companies, Section 1 requires "that the reserve liability on all outstanding policies of insurance and annuity contracts shall be computed upon the net premium basis and in accordance with their terms," with certain rules as to the proper rates of interest and mortality tables to be used.

Section 2 of Article 3.28 provides as follows:

"If the gross premium charged by any life insurance company on any policy or contract is less than the net premium for the policy or contract, according to the mortality table, rate of interest and method used in computing the reserve liability thereon as aforesaid, there shall be maintained on such policy or contract a deficiency reserve in addition to all other reserves required by law. For each such policy or contract the deficiency reserve shall be the present value, according to such standard, of an annuity, the amount of which shall equal the difference between the premium charged and such net premium required by the rules above stated and the term of which in years shall equal the number of annual premiums for the remainder of the premium paying period." (Emphasis added throughout the opinion).

Section 7 of Article 3.44 provides that all life insurance policies issued in this State must contain:

"A provision which, in the event of default in the premium payments after premiums shall have been paid for three (3) full years, shall secure a stipulated form of insurance on the life of the insured, the net value of which shall be equal to the reserve (exclusive of any reserve for disability or accidental death benefits) at the date of default on the policy, and on any dividend additions thereto, according to the mortality table, rate of interest and method adopted for computing such reserve, less a sum of not more than two and one-half ($2\frac{1}{2}$) percent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy;. . . The policy shall state: (1) The amount and term of the stipulated form of insurance calculated upon the assumption of no indebtedness on the policy and no dividend additions thereto; and (2) the method, rate of interest, and mortality table for computing the policy reserve which may be such as may be authorized by law for use in computing the reserve liability of the company on such policy. Such provision shall also stipulate that the policy may be surrendered to the company at its home office within one month from the due date of any premium for its cash value, which shall be specified in the policy and

which shall be at least equal to the sum which
would otherwise be available for the purchase
of insurance, as aforesaid, <u>but not more than
the reserve for the policy. . .</u>"

The question to be decided is whether the non-
forfeiture benefits and values mentioned in Article 3.44
must be increased by the amount of the deficiency reserve
required to be maintained by Section 2 of Article 3.28
when the policy is sold for a gross premium less than the
net premium. More specifically, does the word "reserve"
in Article 3.44 necessarily include therein the deficiency
reserve provided for in Article 3.28?

The premium charged for a life insurance contract
is supposed to cover all contingencies a company is likely
to meet, and these may be conveniently grouped into three
classes, viz., mortality, interest and expenses. In com-
puting the mortality tables, which are the basis upon which
the liability of the company is calculated, the matter of
expenses, which includes such costs as salaries, rents, com-
missions, etc., is omitted. The premium computed by such a
table is referred to as the "net" premium while the premium
loaded with the expense factors is termed "gross" premium.
The gross premium is the premium known to the policyholder,
but before it is obtained an actuary must have ascertained
the net premium.

Before we are able to define the term "reserve"
referred to in Section 7 of Article 3.44, it is necessary
to discuss the meaning of that term in connection with
Article 3.28.

The legal reserve required to be maintained by
life insurance companies by the terms of Article 3.28 re-
presents the liability of the issuing company because of
its outstanding policy obligations. The reserve may be
stated to be the difference between the present value of
the benefits to be paid, less the present value of the pre-
miums yet to be collected. This formula is contrived from
the theory that in a level premium plan policy, the com-
pany meets its ultimate obligation to the policyholder by
setting aside the premiums collected and placing them at
interest. When a policy is issued, the present value of
all of the premiums yet to be collected is exactly equal
to the present value of the death benefits promised to be
paid in the policy in actuarial theory. At any time after
the date of issue, the value of the remaining net pre-
miums will be less than at the date of issue, since fewer

of such payments remain to be paid while the value of insurance has increased because the date of its payment has drawn nearer. The difference between the increased value of the insurance and the decreased value of the future net premiums must be represented by funds in hand; otherwise, the company will not be able to meet its liability. The difference, or fund in hand, is the reserve with which the company meets that liability.

Under the provisions of Article 3.28 of the Texas Insurance Code, this reserve or liability is calculated on the basis of a mortality table. These tables are calculated on the basis of assumed rates of mortality, and not on the basis of actual mortality experience of the company. As the actual rate of death claims is normally lower than that assumed by the table, the use of such mortality table supplies a safety factor which protects the policyholders by requiring the companies to accumulate greater reserves than in all probability will be required to pay the claims.

A mortality table is constructed by calculating the amount of level premium which, together with the interest accumulated on such premium, will be sufficient to aggregate the amount of the benefits to be paid at the end of the life expectancy. This premium is calculated by taking into consideration the amount of the benefits to be paid, the assumed rate of interest, and the assumed rate of mortality. Out of this calculation is derived the policy reserve in accordance with the formula above stated.

If a company should charge a gross premium actually less than the net premium as calculated to be required by the mortality table used in building up the particular policy, it necessarily follows that the reserve as calculated by such table will be insufficient to reflect the actual liability of the company on the particular policy. The reserve, having been determined to be the present value of the benefits to be paid, less the present value of the premiums to be paid, is based on the assumption that the actual premiums collected will be at least equal to the net premium as calculated by the given mortality table.

For this reason, the legislature provided in what is now Section 2 of Article 3.28 of the Insurance Code, that if the premium charged the policyholder be less than the net premium according to the mortality table used, then the company must set up an additional reserve termed a "deficiency reserve." Since the premium collected, plus accumulated

interest, would not be sufficient to build up a reserve adequate to meet the company's liability as calculated by the table used, the company must be able to meet this additional liability from its surplus funds.

The non-forfeiture values or benefits of a given policy, are provided for in Article 3.44 and are based on the "reserve on the policy." These non-forfeiture values are the cash surrender or loan value, the amount of paid-up life insurance available at a given period, or the term for which a certain amount of insurance will be available for a given policy. The theory upon which these benefits are afforded in a particular policy is that from the accumulated premiums on insurance paid by the policyholder the company has on hand a fund paid in by the policyholder which it holds to honor the company's contract with that policyholder. We have previously ascertained that the amount of the "deficiency reserve" which a company is required to maintain on the type of policy in question is not derived from funds contributed by the particular policyholder, but rather from the other surplus funds of the company. If it should be concluded that the "deficiency reserve" was part of the reserve under the provisions of Section 7 of Article 3.44, the result would be that the amount of these non-forfeiture values or benefits would be increased in relation to the disparity between the premiums actually collected and the net premiums as calculated by the mortality table. In other words, the policyholder by paying less premium receives greater non-forfeiture benefits.

We are of the opinion that the word "reserve" mentioned in Section 7 of Article 3.44 is solely the reserve calculated "according to the mortality table, rate of interest" as specified in the policy. It is to be noted in this connection that Section 7 provides in part that "the policy shall state: (1). . .The amount and term of the stipulated form of insurance; and (2) the method, rate of interest, and mortality table for computing the policy reserve, which must be such as may be authorized by law for use in computing the reserve liability of the company on such policy."

It is true that by virtue of the requirement in Section 7 of Article 3.44 that the method, rate of interest and mortality table must be such as may be authorized by law for use in computing the reserve liability of the company, and the requirement in 1(c) of Article 3.28 that the reserve liability of the company be computed on the basis of the mortality table in interest rates specified in the

policy, that these two articles are to some extent inter-related. In the case of Gilley v. Missouri State Life Insurance, 116 Tex. 43, 285 S.W. 807, the court discussed the relation of these two provisions in the Insurance Law, and stated: "It is true that a method of computing the net values of policies, etc., is set forth in Article 4498 (a predecessor to Article 3.28) but this is obviously a solvency provision and has no reference whatsoever to what the policy form must contain." We would also draw your attention to Attorney General's Opinion No. O-5255-A approved March 3, 1944, in which it was stated, "We think it clear that Subdivisions (7) and (8) (of then Article 4732, Rev. Stat. of 1925--the predecessor of Article 3.44 of the Insurance Code) referred to the mortality table and rate of interest specified in the policy and not to the standard of solvency provisions in Article 4682 (the predecessor of Article 1.10 of the Insurance Code) and Article 4688 (Article 3.28 of the Insurance Code) of Vernon's Annotated Civil Statutes of 1925."

You are therefore advised that the "reserve" mentioned in Article 3.44 does not embrace nor include the deficiency reserve required in Section 2 of Article 3.28.

## SUMMARY

The "reserve" mentioned in Section 7 of Article 3.44 does not refer to nor include therein the deficiency reserve required to be maintained by the company under the provisions of Section 2 of Article 3.28.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Fred B. Werkenthin

Fred B. Werkenthin
Assistant Attorney General

FBW:nh
APPROVED:
OPINION COMMITTEE:
Geo. P. Blackburn, Chairman
Wallace P. Finfrock
Morgan Nesbitt
Richard Stone
REVIEWED FOR THE ATTORNEY GENERAL
BY: W. V. Geppert